**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

| | | |
|---|---|---|
| TRAVIS LAMAR GORDON, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | CASE NO. 4:07-CV-28 (CDL) |
| | * | 28 U.S.C. § 2241 |
| ALBERTO GONZALES, *et al.* | * | |
| | * | |
| Respondents. | * | |

## REPORT AND RECOMMENDATION

On February 23, 2007, Petitioner Gordon, who is currently incarcerated in the Atlanta City Detention Center, filed the current habeas corpus petition pursuant to 28 U.S.C. § 2241. (R-1). On June 1, 2007, in lieu of an Answer, Respondents filed a Motion to Dismiss and a declaration in support of such, contending that Petitioner had failed to comply with removal efforts. (R-13, 14). Petitioner filed his response to Respondents' Motion to Dismiss on June 12, 2007. (R-16). On June 27, 2007, Respondents filed a Reply Brief in Support of their Motion to Dismiss and attached the second declaration of a Deportation Officer from Immigration and Customs Enforcement (ICE). (R-17-1, 17-2). On July 9, 2007, Petitioner filed a Rebuttal to the Government's Response. (R-18). On July 20, 2007, the Respondents filed a "Notice of Petitioner's Round-Trip to Sierra Leone," a third declaration from a Deportation Officer from ICE, a record of sworn statement in affidavit form from Petitioner, two United States Department of Justice (USDOJ) Form I-217s completed by Petitioner giving information for travel document or passport, a letter purportedly written by Petitioner,

a copy of the Emergency Travel Certificate issued to Petitioner from the Consular Section of the Embassy of Sierra Leone in Washington, D.C. dated March 21, 2007, and an Affidavit from Immigration Enforcement Agent Allan Stepp. (R-20-1, 20-2, and 20-3). On August 6, 2007, Petitioner filed a Reply Brief. (R-21). On September 7, 2007, both parties were given notice that the Motions to Dismiss were to be treated as Motions for Summary Judgment. (R-22).

## FINDINGS OF FACT

1. Petitioner is currently detained by the Immigration and Custom Enforcement (ICE) at the Federal Correctional Complex USP 1 in Coleman, Florida. Petitioner is a native and citizen of Sierra Leone who entered the United States sometime in either 1995 or 2000.[1]

2. On October 20, 2003, a final order of removal was ordered under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA) as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General. Petitioner did not appeal the removal order. (R-13-2, R-16, p.3).

3. The United States was unable to remove Petitioner to Sierra Leone at that time and Petitioner was discharged on supervised release on or about March 19, 2004. (R-16, p. 3).

4. On August 25, 2006, Petitioner was returned to the custody of ICE after being

---

[1] There is a question as to the date Petitioner entered the United States. In his petition for Habeas Corpus, Petitioner states that he entered the United States with inspection on September 10, 1995. (R-1, p.3). In the Motion to Dismiss, Respondent states that Petitioner entered the United States on December 11, 2000, without inspection. (R-13-2, p.1). In his Response to the Motion to Dismiss, Petitioner states that he entered on September 10, 1995, with a visitor's visa and overstayed his visa. (R-16, p.3). In a document dated August 30, 2006, entitled "Information for Travel Document or Passport," Petitioner stated that he entered the United States in February of 1995, with a fraudulent passport. (R-20-2, p.4). In a second form entitled "Information for Travel Document or Passport," Petitioner stated that he entered the United States on September 10, 1995, without a passport or identity card. (R-20-2, p.5).

apprehended by the Dekalb County Sheriff's Department on drug charges. (R-13-2, R-16).

5. On March 21, 2007, the embassy of Sierra Leone issued a travel document for Petitioner's removal there. (R-13-2, p.1 and R-20-2, p.7). On May 23, 2007, Petitioner refused to board his return flight to Sierra Leone and demanded an escort, which was not available at the time. (R-13-2, p.1). On July 8, 2007, Agents Allan Stepp and Juan Echemendia, Immigration Enforcement Agents, were assigned to escort Petitioner from Atlanta to his country, Sierra Leone. (R-20-3). After approximately fifteen hours in flight, the agents and Petitioner arrived in Freetown, Sierra Leone on July 9, 2007. *Id*. They were met by security agents and a Sierra Leone Immigration official. *Id*. Petitioner was taken for a private meeting with the immigration official. *Id*. The immigration official called Agents Stepp and Echemendia into the room where Petitioner was being held. *Id*. When the official asked Petitioner what country he was from, Petitioner stated that he was not from Sierra Leone, but was from Ghana. *Id*. The Sierra Leone immigration officer then called for a supervisor and the police. *Id*. Petitioner was asked the same questions and was then refused entry into Sierra Leone. *Id*. Agents Stepp and Echemendia escorted Petitioner back to the United States.

**DISCUSSION**

In his Application, the Petitioner argues that he has been unlawfully detained by the Department of Homeland Security, Immigration and Custom Enforcement (ICE) for more than six (6) months because ICE has been unable to deport Petitioner to Sierra Leone. (R-1). Petitioner, therefore, requests that his writ of habeas corpus be granted and that he be released. (R-1, p.4)

The Respondent, in its Motions for Summary Judgment, argues that Petitioner has failed to cooperate with their efforts to remove him from the United States. Specifically, Respondent argues that on May 23, 2007, Petitioner was transported to Atlanta Hartsfield-

Jackson International Airport to board a plane for his return to Sierra Leone. (R-14, p.2). However, at the departure gate Petitioner refused to board the plane. *Id*. Respondent further contends that Petitioner failed to cooperate with efforts to remove him on July 8, 2007. (R-20). On such date, two government agents escorted Petitioner from Atlanta to Sierra Leone. *Id*. Upon arrival, Petitioner informed immigration officials that he was not from Sierra Leone but was from another country, Ghana. *Id*. Petitioner was then refused entry into Sierra Leone and the government agents were forced to escort Petitioner back to Atlanta. *Id*.

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure, dealing with motions for summary judgment, provides in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Summary judgment can only be granted if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Fed. R. .Civ. P. 56 (c); Warrior Tombigee Transportation Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). While the evidence and all factual inferences therefrom must be viewed by the court in the light most favorable to the party opposing the motion, the party opposing the granting of the motion for summary judgment cannot rest on his pleadings to present an issue of fact but must make a response to the motion by filing affidavits, depositions, or otherwise in order to persuade the court that there are material facts present in the case which must be

4

presented to a jury for resolution. *See Van T. Junkins & Assoc., Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 658 (11th Cir. 1984).

Specifically, the party seeking summary judgment bears the initial burden to demonstrate to the court the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show that there is an absence of any genuine issue of material fact. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913 (11th Cir. 1993). In determining whether the moving party has met this burden, the court must review the evidence and all factual inferences drawn from this, in the light most favorable to the non-moving party. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

If the moving party successfully meets this burden, the burden then shifts to the non-moving party to establish by going beyond the pleadings, that there are genuine issues of material fact to be resolved by a fact-finder. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Summary judgment is appropriate when the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Tidmore Oil Co. v. BP Oil Co./Gulf Prods. Div., a Div. of BP Oil Co.*, 932 F.2d 1384. 1387-88 (11th Cir.1991), cert. denied, 502 U.S. 925, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991). Motions for

summary judgment are normally decided based on the pleadings, and the discovery of record, together with any affidavits submitted by the parties, in deciding whether summary judgment is appropriate under Rule 56. The party upon whom a Motion for Summary Judgment has been filed has the right to file affidavits or other material in opposition to a summary judgment motion. If he fails or refuses to file any affidavits or other materials in opposition to the Motion for Summary Judgment, a Final Judgment may be rendered against him if otherwise appropriate under law. Specifically, Federal Rule of Civil Procedure 56(e) provides, that:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. **When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party**. (emphasis added).

## APPLICATION OF THE LAW

Petitioner's detention by the INS pending removal from the United States is governed by section 241(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(a).

Under this provision, the Attorney General is afforded a ninety-day period to accomplish the alien's removal from the United States following the entry of a final order of deportation or removal, or, if the alien is confined, the date the alien is released from confinement.[2] See INA § 241(a)(1)(A)-(B), 8 U.S.C. § 1231(a)(1)(A)-(B). During the 90-day period, Congress has mandated detention of the alien ordered removed. See INA § 241(a)(2), 8 U.S.C. § 1231(a)(2). The Attorney General may continue to detain an alien after the expiration of the ninety-day removal period. 8 U.S.C. § 1231(a)(6). In *Zadvydas v. Davis*, 533 U.S. 678, 699-700 (2001), the Supreme Court found that section 241(a) of the INA authorizes detention after entry of an administratively final order of deportation/removal for a period "reasonably necessary" to accomplish the alien's removal from the United States. The Court recognized six months as a presumptively reasonable period of time to allow the government to accomplish an alien's removal. *Id*. at 701.

## COOPERATION IN DEPORTATION

Certain acts by aliens can allow the government to legally continue detention. One such act occurs when the alien prevents removal from the United States.[3] If an alien acts to

---

[2] 8 U.S.C. § 1231(a)(1)(B) provides:
The removal period begins on the latest of the following:
(i) The date the order of removal becomes administratively final.
(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

[3] 8 U.S.C. § 1231(a)(1)(c) Suspension of Period
The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel

prevent removal, the removal period shall extend until the alien proves that he or she has complied with all statutory obligations. 8 C.F.R § 241.4(g)(1)(ii) ("the removal period is extended . . . if the alien . . . acts to prevent the alien's removal subject to an order of removal"). Thereafter, ICE will have a reasonable period of time to remove the alien. *Id*. Circuit courts have held that aliens who do not cooperate with ICE's removal efforts will fail in their habeas corpus petitions. *See Pelich v. I.N.S.*, 329 F.3d 1057, 1061 (9th Cir. 2003) ("[w]e therefore join the existing chorus of courts and hold than an alien cannot assert a viable constitutional claim when his indefinite detention is due to his failure to cooperate with . . . effort's to remove him), *citing Lema v. I.N.S.*, 214 F.Supp.2d 1116 (W.D.Wash. 2002); *Powell v. Ashcroft*, 194 F.Supp.2d 209 (E.D.N.Y. 2002); Sango-Dema v. I.N.S., 122 F.Supp.2d 213 (D.Mass. 2000); *see also Lema v. I.N.S.*, 341 F.3d 853, 857 (9th Cir. 2003) ("removable aliens should not be rewarded with release into the United States for their bad behavior in refusing to assist officials to effect their removal"); cf. *Jing Bin Tang v. Gonzales*, No. 4:06cv277, MP/WCS, slip op. at 8 (N.D. Fla. Oct. 13, 2006) ("Petitioner has caused the extended detention about which he now complains of because of his failure to comply").

As found in the Findings of Fact, the Respondent has presented the sworn statements of ICE Deportation Officer Pamela Jean Reeves (R-13-2 and 20-2) and ICE Agent Juan Echemendia (R-20-3) which provide clear evidence that Petitioner failed to cooperate with

---

or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

8

the deportation efforts of ICE. Petitioner's arguments regarding his refusal to board the plane on May 23, 2007, and the circumstances surrounding the denial of his admission into Sierra Leone on July 9, 2007, wholly lack support and insult the intelligence of the court. The Petitioner cannot hinder his deportation and then complain of his continued detention.

WHEREFORE, IT IS RECOMMENDED that Petitioner's Application for writ of habeas corpus be dismissed without prejudicing Petitioner's right to file a new § 2241 petition in the future if a change in circumstances enable Petitioner to state a claim upon which habeas relief can be granted. Pursuant to 28 U.S.C. § 636 (b)(1), the parties may serve and file written objections to this RECOMMENDATION with the UNITED STATES DISTRICT JUDGE, WITHIN TEN (10) DAYS after being served with a copy hereof.

SO ORDERED this 27th day of December, 2007.

S/ G. MALLON FAIRCLOTH
UNITED STATES MAGISTRATE JUDGE

mZc